UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-cv-61558-KMM

JERALD PAUL,

    Plaintiff,

vs.

ONEMAIN FINANCIAL GROUP, LLP

    Defendant.
_____/

## DEFENDANT'S UNOPPOSED MOTION TO COMPEL ARBITRATION AND STAY LITIGATION, AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant, OneMain Financial Group, LLC, successor by merger to OneMain Financial, Inc.("OneMain Financial"), by and through its attorneys, hereby moves (the "Motion") this Court for entry of an order compelling arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), and staying this litigation pending arbitration in response to the Complaint [DE 1] of Plaintiff, Jerald Paul ("Plaintiff"). In support of this Motion, OneMain Financial states the following:

### I. INTRODUCTION

OneMain Financial is entitled to the relief it seeks because Plaintiff entered into a loan with OneMain Financial, Inc. and an arbitration agreement. The subject arbitration agreement covers any claim related to Plaintiff's loan, as well as "any act or omission by any of us" or "[a]ny case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and US," or any "federal or state statute or regulation, or any violation thereof" (*See* Declaration of Joseph Orlando (hereinafter, "Defendant's Dec."), attached hereto as Exhibit "A," ¶ 4.) Plaintiff's allegations in this lawsuit—that OneMain Financial allegedly violated the

30423425 v2

federal Telephone Consumer Protection Act ("TCPA") for calls allegedly made by OneMain Financial to Plaintiff relating to the loan—are therefore expressly covered by the arbitration provision. Accordingly, this Court should compel Plaintiff to arbitrate his claims and stay this litigation pending arbitration.

## II. FACTUAL BACKGROUND

A.   **Plaintiff's Credit Transaction With OneMain Financial.**

On November 5, 2014, OneMain Financial issued a loan to Plaintiff in the principal amount of $6,740.54 (the "Credit Transaction"). The Credit Transaction was memorialized in a Disclosure Statement, Note, and Security Agreement ("the Note"). (*See* Defendant's Dec., Ex. 1 thereto.) Page three of the Note states that the Borrower and Lender have entered into a separate arbitration agreement, "the terms of which are incorporated and made a part of this Disclosure Statement, Note, and Security Agreement by this reference." (*Id.*). The arbitration agreement, executed by Plaintiff in conjunction with the Note (the "Arbitration Agreement"), provides, in pertinent part:

> **Definitions for Arbitration Agreement.** As used in this Arbitration Agreement ("Agreement"), the following definitions will apply: "You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives. "We" or "Us" or "Our" means the Lender under the Note listed above, its past, present, or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity)."Credit Transaction" means any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You. **"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us.** A Claim includes, without limitation, anything related to:
> - The Note, this Agreement or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
> - Any Credit Transaction;
> - Any past, present, or future insurance, service, or other product that is

- offered or purchased in connection with or ancillary to a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, Service, or Product;
- **Any act or omission by any of Us**;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- **Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws**;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- **Any dispute about closing, servicing, collecting or enforcing a Credit Transaction**

....

(*See id.*, Ex. 2 thereto, p. 1 (emphasis added).)

Accordingly, the Arbitration Agreement expressly binds—in the broadest possible terms—Plaintiff to arbitrate all claims, disputes or controversies arising from or relating to his relationship with OneMain Financial, including any of its subsidiaries, affiliates, assigns, and successors in interest. (*See id.*). The Arbitration Agreement specifically includes claims related to "acts or omissions by any of Us," alleged violations of any "federal or state statute or regulation," and "[a]ny dispute about...servicing, collecting, or enforcing a Credit Transaction," all of which cover Plaintiff's claims that OneMain Financial allegedly violated the TCPA. (*Id.*, p.1).

The Arbitration Agreement designates the American Arbitration Association ("AAA") as arbitral forums and provides that "any claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the then applicable Rules of the chosen 'Administrator,' and (iii) this Agreement, unless We and You both agree in writing to forego arbitration." (*See id.*, p.1). Thus, the Arbitration Agreement expresses the parties' intent that the Federal Arbitration Act shall apply to and govern the Arbitration

Agreement. (*See id.*) Per the Arbitration Agreement, the only type of claims excluded from arbitration are: "[(1)] Any action . . . to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law . . . .; [(2)] Any claim where all parties collectively [ ] seek monetary relief in the aggregate of $15,000 or less in total relief . . . ." (*Id.*).

The significance and effect of the Arbitration Agreement is emphasized by the following disclosure, which is printed in bold and upper-case type directly above Plaintiff's signature:

> **Special Acknowledgments. You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1, et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in court proceeding, and (iv) rights to appeal an arbitration award are very limited.**
>
> **READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION. BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.**

(*See id.*, p. 2).

### B. Plaintiff's Allegations.

In his Complaint, Plaintiff alleges he began receiving calls to his cell phone from OneMain Financial using an automated telephone dialing system. (Compl., ¶ 11). According to the Complaint, Plaintiff claims he demanded OneMain cease calls to his cell phone in March,

April, June and July of 2017 (Compl., ¶¶ 14-18). Furthermore, Plaintiff's Complaint explicitly asserts a count for alleged violations of the TCPA (Compl., Count I, ¶¶ 26-40). Consequently, there can be no dispute Plaintiff's claims fall squarely within the definition of "Covered Claims" in the Arbitration Agreement.

Accordingly, OneMain Financial files this Motion to enforce the Arbitration Agreement and to have the Plaintiff's claims against OneMain Financial resolved in binding arbitration.

### III. LEGAL ARGUMENT

The Arbitration Agreement is governed by the FAA. Under federal law, this Court must compel Plaintiff to arbitrate his disputes with OneMain Financial and should stay this litigation.

**A.     The FAA Applies to and Governs the Arbitration Agreement.**

It is the FAA that applies in this case. Through the FAA, Congress "mandated the enforcement of arbitration agreements." *Southland Corp.* v. *Keating*, 465 U.S. 1, 10 (1984). Section 2 of the FAA, the "primary substantive provision of the Act," *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S. Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), provides that binding arbitration provisions "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The FAA applies in both federal and state courts. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *KPMG LLP v. Cocchi*, 565 U.S. ___, 132 S. Ct. 23, 24 (2011) (per curiam) ("Agreements to arbitrate that fall within the scope and coverage of the [FAA] must be enforced in state and federal courts.").

The United States Supreme Court has described Section 2 of the FAA as reflecting the "fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v.*

*Jackson*, 561 U.S. 63, 67 (2010). Thus, arbitration agreements, like other contracts, are enforceable in accordance with their terms. *Concepcion*, 131 S. Ct. at 1745-46. Section 2 of the FAA represents a congressional declaration of a "liberal federal policy favoring arbitration." *Id.* at 1745. Federal policy, therefore, requires courts to "construe arbitration clauses generously, resolving all doubts in favor of arbitration." *Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007).

Under the FAA, "parties [to an arbitration agreement] are generally free to structure their arbitration agreements as they see fit," and may "specify by contract the rules under which that arbitration will be conducted." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). Accordingly, when an arbitration agreement explicitly designates the FAA as the applicable governing law, courts consistently uphold the intentions of the parties and enforce the provision. *See, e.g., Staples v Money Tree*, 936 F. Supp. 856, 858 (M.D. Ala. 1996) ("[B]ecause [the parties] have stipulated that the contract between them involves interstate commerce within the meaning of the FAA, the court must, and will, enforce the stipulation and apply the FAA to the arbitration agreement[.]"); *Roberson v. Money Tree*, 954 F. Supp. 1519, 1523, n.4 (M.D. Ala. 1997) (same); *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896 (Tex. App. 2006) ("Courts honor the parties' agreement to be bound by the FAA, upholding choice-of-law provisions providing for application of the FAA."); *Langfitt v. Jackson*, 644 S.E. 2d 460, 465 (Ga. App. 2007) (same).

In the present case, the Arbitration Agreement expressly states that the Federal Arbitration Act governs its provisions, and acknowledges that the "Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1, et seq., as amended." (*See* Evans

30423425 v2

6

Dec., Ex. 2 thereto.) As a result, there can be no dispute that the FAA governs the Arbitration Agreement.[1]

### B. The Arbitration Agreement Must Be Enforced Under the FAA.

"Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *See Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (*citing Buckeye Check Cashing*, 546 U.S. at 443). Additionally, the FAA was passed "to reverse the longstanding judicial hostility to arbitration agreements . . . ." *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). Accordingly, under the FAA, written agreements to arbitrate controversies arising out of an existing contract are "valid, irrevocable and enforceable." 9 U.S.C. § 2.

Arbitration is highly favored for its "simplicity, informality, and expedition." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). "A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results . . . .'" *Concepcion*, 131 S. Ct. at 1749 (citations omitted).[2] And, the United States Supreme Court has

---

[1] The FAA would still apply in this matter even absent a provision designating the FAA as the governing law. The FAA applies to an arbitration agreement arising out of a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Section 1 of the FAA expressly defines "commerce" as "commerce among the several States or with foreign nations." 9 U.S.C. § 1. The United States Supreme Court has held that the FAA reaches to the outer limits of Congress' power to regulate under the Commerce Clause. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272-74 (1995). Simply put, the Credit Transaction at issue in this case involves interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003) ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Agreement."). Thus, even had the parties not expressly chosen that the FAA would apply to and govern their Arbitration Agreement, it is nevertheless independently governed by and enforceable under the FAA by virtue of the fact that it arises out of the Credit Transaction– a contract involving interstate commerce.

[2] The United States Supreme Court acknowledges "that Congress, when enacting [the FAA], had the needs of consumers, as well as others, in mind. Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation." *Dobson*, 513 U.S. at 280 (internal citations omitted).

repeatedly confirmed that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *KPMG*, 132 S. Ct. at 25 (quoting *Mitsubishi Motors*, 473 U.S. at 631).

The FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Accordingly, and in furtherance of the policy favoring arbitration, the FAA "***mandates*** that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3 and 4) (emphasis added).

Given the strong federal policy favoring arbitration, it is "the party resisting arbitration [which] bears the burden of proving that the claims at issue are unsuitable for arbitration." *Randolph*, 531 U.S. at 91; *see also Gilmer*, 500 U.S. at 26 (finding that "the burden is on [the party opposing arbitration] to show that Congress intended to preclude a waiver of a judicial forum"). The party opposed to arbitration cannot meet its burden by making "generalized attacks on arbitration that rest on 'suspicion of arbitration.'" *Randolph*, 531 U.S. at 89-90; *see also Mitsubishi Motors*, 473 U.S. at 626-27 (stating that "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution").

Under the FAA, accordingly, courts throughout the country, including the United States Supreme Court, routinely enforce arbitration agreements in consumer contracts like the one here. *See, e.g., CompuCredit Corp. v. Greenwood*, 563 U.S. ___, 132 S. Ct. 665 (2012) (credit card agreement); *Concepcion*, 131 S. Ct. 1740 (cell phone services contract); *Buckeye Check Cashing*, 546 U.S. 440 (consumer loan agreement); *Randolph*, 531 U.S. 79 (finance contract for purchase

of mobile home); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (home improvement loan); *Dobson*, 513 U.S. 265 (termite protection contract); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205 (11th Cir. 2011) (cell phone services contract); *Scott v. EFN Invs., LLC*, 312 F. App'x 254 (11th Cir. 2009) (consumer sales contract for the purchase of a vehicle); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d. 553 (7th Cir. 2003) (home equity loan); *Beckwith v. Caliber Home Loans, Inc.*, No. 3:15-cv-00581-RDP, 2015 WL 3767187 (N.D. Ala. June 17, 2015) (Proctor, J.) (mortgage loan); *Leeman v. Cook's Pest Control, Inc.*, 902 So.2d 641 (Ala. 2004) (termite contract).

A trial court's role in determining whether a motion to compel arbitration under the FAA should be granted involves a two-step inquiry. First, the court must determine if the parties agreed to arbitrate. Second, the court determines if the dispute falls within the scope of the arbitration provision. 9 U.S.C. §§ 2, 4; *see, e.g., Bazzle*, 539 U.S. at 451-53; *Mitsubishi Motors Corp.*, 473 U.S. at 626-28. In applying the first step, courts are to consider the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone*, 460 U.S. at 24. If the Court determines that the answer to both questions is "yes," then the FAA requires the Court to enforce the arbitration agreement and compel arbitration. The FAA "leaves no place for the exercise of discretion by a [trial] court, but instead mandates that [trial] courts *shall* direct the parties to proceed to arbitration . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Additionally, under the federal policy favoring arbitration, it is the role of the courts to "rigorously enforce agreements to arbitrate," *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004), and to "construe any doubt in favor of arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626.

The Credit Transaction unquestionably contains a written agreement between Plaintiff

and OneMain Financial to arbitrate certain claims, to which Plaintiff expressed a clear intention to be bound by signing the Arbitration Agreement. (*See* Evans Dec., Ex. 1 and 2 thereto.) Thus, the first prerequisite to enforcement of the Arbitration Agreement is satisfied.

The next question is whether Plaintiff's claims fall within the scope of the Arbitration Agreement. In making this determination, it should be noted that any questions or doubts about the arbitrability of a particular dispute or issue must "be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. And where the agreement to arbitrate is broad, as is the case here with the Arbitration Agreement, there is a heightened presumption of arbitrability such that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)). As set forth below, however, the most important factor in the assessment of the arbitrability of Plaintiff's claims is that the issue is one for the arbitrator to decide.

    1. **Any Threshold Dispute Concerning Arbitrability, or the Validity and Enforceability of the Arbitration Agreement, Must be Decided by the Arbitrator.**

Where an arbitration agreement contains a delegation provision that vests in an arbitrator the authority to determine the validity and enforceability of the arbitration agreement, those threshold issues must be compelled to arbitration. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67-71 (2010). When parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court. *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).

In *Rent-A-Center*, the United States Supreme Court acknowledged the right of parties to include delegation clauses in arbitration agreements, whereby they "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68-69 (citing *Howsam*, 537 U.S. at 83-85). To be enforceable, such delegation clauses are subject to a heightened standard, *i.e.*, the parties' intent to arbitrate the issue of arbitrability must be demonstrated by "clear and unmistakable evidence." *Id.* at 79; *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation omitted). Unless a party specifically and discretely challenges a clear and unmistakable delegation of authority to the arbitrator, any challenge to the validity or enforceability of the entire arbitration agreement is subject to arbitration and must be left for the arbitrator to resolve. *Rent-A-Center*, 561 U.S. at 70-71.

It is **clear** and **unmistakable** that the Arbitration Agreement delegates the gateway determinations of arbitrability of Plaintiff's claims, as well as questions of the validity and enforceability of the Arbitration Agreement, to the arbitrator. The Arbitration Agreement **clearly** and **unmistakably** indicates that "[j]urisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of this Agreement under which arbitration is sought, shall be submitted to and ruled on by the arbitrator, unless the relevant law requires that a court of competent jurisdiction make such determinations." (*See* Evans Dec., Ex. 2 thereto, p. 2.) This is a typical broad delegation provision concerning the threshold issue of arbitrability, and according to the overwhelming authority, the Court must compel arbitration of Plaintiff's claims without addressing the merits of the Plaintiff's potential challenges to arbitrability or the validity or enforceability of the Arbitration Agreement.[3]

---

[3] Additionally, the Arbitration Agreement incorporates the rules of the American Arbitration Association (the "AAA") which requires the arbitrator to decide the issue of arbitrability of claims. Agreements such as this one

The delegation of these threshold determinations to the arbitrator could not be any clearer and any less mistakable. Barring any discrete challenge to the delegation provision itself, the Court must not consider the merits of any challenges Plaintiff may purport to raise concerning the validity or enforceability of the Arbitration Agreement or whether his claims are suitable for arbitration. *See Rent-A-Center*, 561 U.S. at 70-71. Nor can the Court consider the merits of any challenge Plaintiff may assert to the validity or enforceability of the overarching Credit Transaction/Note in which the Arbitration Agreement is incorporated. *See id.* Because there can be no serious dispute as to the clear and unmistakable delegation of the threshold issues to the arbitrator, the Court's work is finished and it must compel arbitration. *See id.* at 72; *Byrd*, 470 U.S. at 218.

### 2. Assuming *Arguendo* That There Were No Delegation Provisions, the FAA Would Nevertheless Require That Plaintiff's Claims be Compelled to Arbitration.

Even had the parties not delegated gateway determinations to the arbitrator, the FAA nonetheless would require that arbitration be compelled here as Plaintiff's claims clearly fall within the scope of claims covered by the Arbitration Agreement. As the Eleventh Circuit has explained, "[u]nder the FAA, upon motion of a party, district courts **must** compel arbitration of ***all claims subject to arbitration***." *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (emphasis added). In this case, it was agreed that "all claims and disputes between 'You and Us,'" (*i.e.*, between OneMain Financial and Plaintiff) would be arbitrated. (*See*

---

authorize the arbitrator to decide issues of arbitrability based on the governing arbitration rules and have routinely been upheld by state and federal courts, particularly within the Eleventh Circuit Court of Appeals, under the doctrine announced in *First Options, Inc. v. Kaplan*, 514 U.S. 938 (1995). *See, e.g., Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005) (holding that, by incorporating rules of AAA into arbitration agreement, parties delegated issue of arbitrability to arbitrator); *see also U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, (11th Cir. 2014) (finding district court erred in refusing to allow arbitrator to determine arbitrability where agreement incorporated AAA rules); *CitiFinancial Corp., LLC v. Peoples*, 973 So. 2d 332, 339 (Ala. 2007)(relying on *Terminix* in holding that incorporation of Commercial Arbitration Rules "clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration provision").

Evans Dec., Ex. 2 thereto.) There can be no serious question as to whether Plaintiff's claims against OneMain Financial meet that threshold.

If that provision, alone, were somehow insufficient to compel Plaintiff to bring his claims against OneMain Financial in arbitration, the Arbitration Agreement further provides certain enumerated examples of claims covered, such as those arising from or relating to: (1) "[a]ny act or omission by any of Us," (2) any alleged violation of a "federal or state statute or regulation," or (3) "any dispute about…servicing, collection, or enforcing a Credit Transaction." (*See id.*) Plaintiff's allegations—that OneMain Financial committed acts in the course of servicing and collecting the debt that Plaintiff alleges violated the TCPA, a federal statute, and the FCCPA, a state statute—fall squarely within each of these specific examples of covered claims under the Arbitration Agreement.

Accordingly, Plaintiff's claims must be arbitrated in accordance with the Arbitration Agreement. This is particularly true given the broad construction courts are required to give contractual arbitration provisions and the command to resolve any doubts in favor of arbitration. Therefore, if Plaintiff desires to pursue his claims against OneMain Financial, he should be compelled to initiate arbitration in accordance with the Arbitration Agreement and applicable law.

**C.     Plaintiff's Claims Should be Stayed.**

Once it is determined that the claims asserted in a pending court action are subject to an arbitration agreement, the FAA mandates that the action on the claims be stayed pending arbitration of the claims. *See* 9 U.S.C. § 3. Section 3 provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an

> agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3. As the United States Supreme Court has made clear, "state courts, as much as federal courts, are obliged to grant stays of litigation under § 3 of the [FAA]." *Moses H. Cone*, 460 U.S. at 26. Because all of the claims at issue in this litigation are subject to arbitration, this litigation should be stayed while the claims are arbitrated. *See, e.g., Jefferson v. Baptist Health Sys., Inc.*, No. 2:14-CV-01028-SGC, 2014 WL 6455144, at *1 (N.D. Ala. Nov. 13, 2014) (Proctor, J.) (ordering that action be stayed pending result of arbitration); *Johnson v. Carter*, No. 2:11-CV-493-WKW, 2012 WL 652225, at *1 (M.D. Ala. Feb. 29, 2012) (same); *Ex Parte Main Street South, Ltd.*, 577 So. 2d 1289 (Ala. 1991) (same). Accordingly, OneMain Financial respectfully requests that, in connection with compelling the claims against OneMain Financial to arbitration, the Court stay all proceedings related thereto, including all discovery, pending their resolution in arbitration.

## IV. CONCLUSION

Plaintiff should be compelled to arbitrate all of his claims against OneMain Financial and this case should be stayed pending arbitration. There is a valid written arbitration provision that covers the claims asserted against OneMain Financial; the Credit Transaction clearly involved interstate commerce; and the Arbitration Agreement is unquestionably broad enough in scope to encompass the claims in this action.

**WHEREFORE**, premises considered, OneMain Financial respectfully requests that this Court grant its Motion to Compel Arbitration and Stay Litigation.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

The undersigned certifies that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and all parties have indicated they do no object to the relief sought herein.

Respectfully submitted this 11th day of September, 2017.

/s/ David A. Elliott
David A. Elliott, Esq. (FL Bar No. 94237)
Nicholas S. Agnello, Esq. (FL Bar No. 90844)
BURR & FORMAN, LLP
350 East Las Olas Blvd., Suite 1440
Fort Lauderdale, Florida 33301
Telephone: 954-414-6202
Facsimile: 954-414-6201
Primary Email: FLService@burr.com
Secondary Email: nagnello@burr.com
Secondary Email: delliott@burr.com
Secondary Email: rzamora@burr.com
*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing by U.S. Mail on this the 11th day of September, 2017:

Yechezkel Rodal, Esq.
RODAL LAW, P.A.
3201 Griffin Road, Suite 203
Dania Beach, FL 33312
Email: chezky@rodallaw.com
*Attorney for Plaintiff*

/s/ *David A. Elliott*
David A. Elliott, Esq. (FL Bar No. 94237)
BURR & FORMAN LLP